UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL FOSTER,

                Petitioner,                              Case Number: 16-12476
                                                            Honorable David M. Lawson
v.

ANTHONY STEWART,

                Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

As a result of physical abuse and neglect, which the state court described as "grievous," April Foster's six-year-old daughter died of pneumonia. Foster was convicted of torture, child abuse, and first-degree felony murder and sentenced to life in prison without the possibility of parole. Finding no relief in the state appellate courts, she filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that her trial should have been severed from her co-defendant's, her lawyer was constitutionally ineffective, the prosecutor committed misconduct, and the cumulative effect of these alleged violations deprived her of a fair trial. Because the state courts adjudicated Foster's claims consistently with controlling federal law, and none of them support issuance of the writ, the Court will deny the petition.

I.

After her daughter, Avril Johnson (AJ), passed away, Foster was tried with a co-defendant, David Hairston, before a jury in the Wayne County, Michigan circuit court. The Michigan Court of Appeals summarized the facts in its opinion on direct appeal as follows:

> Defendant's convictions arise from the death of her six-year-old daughter, AJ. The evidence at trial established that defendant and co-defendant David Hairston subjected AJ and AJ's sister, KJ, to grievous physical abuse and neglect. As a

consequence of this abuse and neglect, AJ then died of "bilateral bronchial pneumonia associated with neglect and abusive injuries." More specifically, at trial, a forensic pathologist explained that AJ's extensive physical injuries and her history of neglect left her in a weakened physical state which prevented her body from fighting off the pneumonia. Defendant and Hairston were tried jointly before one jury, and both were convicted.

*People v. Foster*, No. 317444, 2015 WL 213123 (Mich. Ct. App. Jan. 15, 2015).

The jury found Foster guilty of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), first-degree child abuse, Mich. Comp. Laws § 750.136b(2), third-degree child abuse, Mich. Comp. Laws § 750.136b(5), and two counts of torture, Mich. Comp Laws § 750.85(1), one count of which involved AJ's sister, KJ. Hairston was convicted of first-degree felony murder, first-degree child abuse, and two counts of torture.

The trial court sentenced the petitioner to life in prison without parole for first-degree felony murder and lesser term-of-year sentences on the other crimes. Foster's convictions were affirmed on appeal. *People v. Foster*, 2015 WL 213123, *lv. den.* 498 Mich. 855, 864 N.W.2d 578 (2015).

Foster's petition for a writ of habeas corpus alleges the following grounds for relief:

I. The petitioner was prejudiced and denied a fair trial by being tried jointly with her co-defendant.

II. Ineffective assistance of counsel.

III. The prosecutor committed misconduct during her closing arguments.

IV. The cumulative effect of the errors in this case deprived the petitioner of federal and state due process rights.

Pet. at 5-10, ECF No. 1, PageID.5-10.

The warden filed an answer to the petition raising the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly

some of her claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). This procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from

a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Even though the state appellate courts reviewed some of Foster's federal claims on appeal under a plain error standard, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here. The petitioner must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)). That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under [*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law

procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013).

A.

Foster first argues that her rights to due process and a fair trial were violated when she was tried jointly with her co-defendant, David Hairston. She contends that the trial judge should have severed the defendants, and that her attorney was ineffective by failing to move for severance or for a separate jury. She says that she and Hairston presented mutually antagonistic defenses, and the trial court and prosecutor acted as if she and Hairston "were one entity, not 2 individuals who needed to be judged separately." Pet. at 17, ECF No. 1, PageID17.

Because Foster never asked the trial court for severance, the Michigan Court of Appeals held that she did not preserve the claim for appellate review. It appears, though, that the court addressed the issue under a plain error standard and rejected it, declaring that "severance was not necessary to prevent prejudice to her substantial rights." *Foster*, 2015 WL 213123 at *1. The court found that, rather than presenting irreconcilable defenses, Foster and Hairston presented the same main defense: the children had not been abused and KJ, the deceased's sister, fabricated her testimony about abuse. *Ibid.* Both defendants also raised the possibility that AJ died because she lacked a thymus gland and, consequently, could not fight infection. *Ibid.* The state court also rejected Foster's argument that Hairston's defense — that he did not live in the home with the children and that he lacked control or authority over the children — necessarily implicated the petitioner:

> Contrary to defendant's argument, Hairston's denial of control over the children was not inconsistent with defendant's main theory that the children had not been abused and that AJ died from natural causes. The jury could have believed Hairston's theory that he had no access to the children, and therefore, he could not have abused either child, as well as defendant's theory that any injuries were accidental and AJ died as a result of pneumonia due to her weakened immune system. Thus, the jury could have believed the core of both defendant's and Hairston's legal theories at trial. Moreover, to the extent Hairston's denial of control over the children was arguably at odds with defendant's efforts at trial to attribute the worst of any potential abuse to Hairston, we note that finger pointing such as this by co-defendants does not create mutually exclusive antagonistic defenses where, as in this case, the jury was instructed on an aiding and abetting theory. In such circumstances, no prejudice is created by finger pointing because the properly instructed jury could have found both defendants similarly liable without any prejudice or inconsistency because one found guilty of aiding and abetting can also be held liable as a principal. In other words, defendant has not shown the existence of prejudice because she would have been properly found guilty whether the jury believed she merely aided Hairston or whether they believed she personally conducted the abuse. In short, defendant has not shown the existence of mutually exclusive antagonistic defenses and she is not entitled to relief on this basis.

*Foster*, 2015 WL 213123 at *2 (quotation marks and citations omitted).

This decision was consistent with governing federal law. When reviewing a claim that alleged improper joinder of defendants violated a constitutional right, a habeas court must ask a basic question: did the joint trial "result in prejudice so great as to deny a defendant h[er] . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). Generally, severance is granted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 458-59 (6th Cir. 2001) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The Supreme Court has provided examples of when a defendant's trial should be severed from that of co-defendants: "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant"; "[w]hen many defendants are tried together in a complex case and they

have markedly different degrees of culpability"; when "[e]vidence [could be admitted] that is probative of a defendant's guilt but technically admissible only against a codefendant"; or "if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539 (citing *Kotteakos v. United States,* 328 U.S. 750, 774-775 (1946); *Bruton v. United States,* 391 U.S. 123 (1968); *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir. 1979) (per curiam). None of that occurred in Foster's case.

Even if one could view Foster's and Hairston's defense as antagonistic, that alone would not result in a fundamentally unfair trial. Antagonistic defenses exist "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993) (citing *United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978)). "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988). Foster has not made that showing.

"To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation . . ., [the court] must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged." *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979). This is a "very heavy burden." *Stanford*, 266 F.3d at 459. The state courts determined that Foster had not met that burden. That decision reasonably applied federal law. Foster is not entitled to relief on her joint-trial claim.

B.

Foster argues next that the prosecutor committed misconduct by appealing to the jury's sympathy for the victims, and by intentionally linking her with Hairston and treating them as a unitary entity, suggesting that the two defendants must rise or fall together. Foster contends that this latter misbehavior was aggravated by the trial court repeatedly referring only to "the defendant" in the jury instructions. The state court of appeals disagreed. It held that the trial court's jury instructions clearly directed the jury that though both defendants were on trial, it must consider each defendant separately. For example, the trial court instructed the jury:

> April Foster and David Hairston are both on trial in this case. The fact that they are on trial together is not evidence that they were associated with each other or that either one is guilty. You should consider each defendant separately. Each is entitled to have his or her case decided on the evidence and the law that applies to them. If any evidence was limited to one defendant, you should not consider it as to the other defendant.

*Foster*, 2015 WL 213123 at *3.

The court found no misconduct by the prosecutor because the prosecutor appropriately argued that Foster and Hairston acted jointly in abusing, neglecting, and torturing A.J. and K.J. *Id.* at *4. The court also held that even if the prosecutor's argument "blurred the distinction" between the two defendants, the trial court's instruction cured any error. *Id.*

The Michigan Court of Appeals's decision reasonably applied clearly established federal law to its review of the prosecutor's trial tactic, which is found in the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See Parker v. Matthews*, 567 U.S. 37, 46 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974)). The state court's decision denying Petitioner's prosecutorial misconduct claims "'was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

The trial court accurately informed the jury that the defendants' cases should be considered separately. Jurors are presumed to follow a trial court's instructions. *Stanford*, 266 F.3d at 459. And there is no showing that the prosecutor's conduct denied Foster a fair trial. It was natural for the prosecutor to discuss the defendants together as they were both charged in connection with the abuse suffered by A.J. and K.J. The prosecutor did not, however, urge the jury to consider the two defendants as one entity or argue to the jury that the guilt of one defendant necessarily ordained the guilt of the other. The jury was adequately instructed that each defendant stood trial for his or her own actions.

Foster also criticizes the prosecutor's rebuttal argument, contending that the prosecutor improperly placed the prestige of her office behind the case and she appealed to the jury's sympathy. The petitioner specifically objects to the prosecutor's following argument:

> [W]hat Flint did is—has nothing to do with this case at all—at all with the Flint Police.
> What happened here is that about ten months ago, Sergeant [Samuel] Mackie [] and I, we sat down and we reviewed this case. And we looked at what we had and we decided, ladies and gentlemen, that we would try to be the voice that [AJ] never had.
> We would try to give [KJ] a voice.
> We would try to get justice for the murder of this little girl, for the abuse and torture that they underwent.
> And we can't bring them back, but we can ask you for justice and that's what we're doing here today, because we have done our best to present the evidence. It's now in your hands.
> And I am asking you on behalf of [KJ], on behalf of [AJ], to find them guilty of murder, child abuse, and torture. Because the evidence proves it, because that's

what they do, and because that is justice for those children.

*Foster*, 2015 WL 213123 at *6.

The Michigan Court of Appeals found none of the challenged comments improper. First, the state court held that the prosecutor's comments about her conversation with Sergeant Samuel Mackie (a City of Detroit police officer) fairly responded to co-defendant Hairston's argument that Flint police officers did not initially identify Hairston as a suspect. *Foster*, 2015 WL 213123 at *6. The prosecutor's argument explained the progression of the state's case and did not attempt to bolster it based upon the prestige of the prosecutor's office. The state court's conclusion was not contrary to *Darden*.

The Michigan Court of Appeals also found no error in the prosecutor's argument that the jury should "follow her lead" and "do justice" for A.J. and K.J. *Ibid.* The court of appeals held that the prosecutor's argument was "directly tied to the evidence" and did not seek a conviction on any basis other than the strength of the evidence presented. *Ibid.* Certainly, the state's attorney "must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotation omitted). But a prosecutor does not overstep by appealing to the jurors' sense of justice. *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009). The Michigan Court of Appeals's evaluation of the prosecutor's comments reasonably concluded that the prosecutor's comments remained within permissible bounds. Her argument was neither inflammatory nor intended to incite passion or prejudices. Habeas relief is denied on this claim.

C.

Foster also contends that she was denied the effective assistance of counsel because her attorney did not move to sever her trial from her co-defendant's.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief "is 'difficult to meet.'" *Woodall*, 572 U.S. at 419, quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). The standard is "all the more difficult" on habeas corpus review because "[t]he standards created by *Strickland* and § 2254(d) are both highly

deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid.*

The Michigan Court of Appeals reviewed this claim for plain error because Foster did not preserve the claim by moving for a new trial or an evidentiary hearing. *Foster*, 2015 WL 213123 at *4. It found no evidence that merited severance. *Ibid.* Because Foster and Hairston did not offer incompatible defenses, the state court found no likelihood a motion to sever would have been successful. *Ibid.* It concluded that defense counsel was not ineffective by failing to raise a meritless motion. *Ibid.* The court also held that Foster did not overcome the presumption that trial counsel's decision not to move for severance or separate juries was a matter of trial strategy. *Id.* at 5. Trial counsel may have concluded that, because Foster and Hairston denied the abuse occurred, a joint trial offered the best opportunity to cast reasonable doubt on the prosecution's case. Or, counsel may have concluded that a joint trial created an opportunity to blame Hairston alone for all of the abuse. *Ibid.*

Those holdings faithfully applied the *Strickland* standard. Counsel was not required to raise meritless arguments. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). And the decision to move for severance in this case can easily be categorized as trial strategy. Federal habeas courts do not second-guess judgments of that sort. *See White*, 572 U.S. at 420; *Strickland*, 466 U.S. at 689 (cautioning that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy'") (citation omitted). The state court's determination that failing to move for a severance did not constitute ineffective assistance of counsel was therefore not an unreasonable application of federal law.

D.

Finally, Foster asserts that she is entitled to habeas relief based upon cumulative error. The Michigan Court of Appeals denied this claim because there were no individual errors and therefore no cumulative error. *Foster*, 2015 WL 213123 at *7. The argument cannot justify habeas relief from a federal court because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *see also Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of [the Sixth Circuit] is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."). Foster's cumulative-error claim, therefore, is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that she is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: July 30, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 30, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI

---